AMBRO, Circuit Judge,
dissenting.
This case asks a simple question: are the words of a release so certain that no confusion can exist as to their meaning, and ultimately the parties’ intent. My colleagues believe (along with the District Court) that the words of the release here are so clear that no reasonable person can confuse the intent of KDI and Calvitti.[7] That belief is both plausible and well stated: Calvitti released KDI, the Plan and the “Trustees” of the Plan from all “claims, ... agreements, ... or causes of action” of any kind, including ERISA claims. But if that belief is so certain, why is it that the parties acted otherwise after the release was signed?
Words are the parties’ attempt to communicate their intent. If the intent of the Agreement and Release signed by Calvitti and KDI were to release the monies left in the Trust (approximately $275,000) as of the date of the release (October 30, 1995), it misfits reason that all actions by KDI within months after the release indicated its understanding that the monies in the Trust someday would be Calvitti’s. KDI made post-release an additional contribution to the Trust to complete its funding obligation under the Plan that existed before the release. This KDI did in the face of specific language in the release that absolved it of any “obligation to make any additional contributions to the Trust established pursuant to the [P]lan.” (App.87.) And again, in August 1996, Calvitti formally asked that the funds then in the Trust be given to him. KDI’s general counsel, the same person who signed the release on behalf of KDI less than a year earlier, responded that KDI had “determined to continue administration of the Plan according to its terms.” Street sense simply would expect a response by KDI to Calvit-ti that he released his rights to the Trust monies. Not only was there no such response, KDI appeared to have agreed then with what Calvitti asserts was the parties’ intent.
But my colleagues say the words of the release counter the post-release actions of the parties and the claims of Calvitti. “In language as plain as can be, both the Plan and Trust Agreement state that Calvitti never had any interest in, or right to, the assets in the Trust. His claim to Plan proceeds were against KDI, and he waived all his claims when he signed the [release].” Maj. Op. at 656. The implication is that no reasonable person could believe other than that Calvitti waived his rights to the monies remaining in the Trust.
But KDI was reasonable, and it acted otherwise. Calvitti did as well. There are thus before us competing meanings of the release. “To choose between ... competing meanings, we can consider extrinsic evidence of the parties’ understanding of [the release]. An important source of such evidence is the parties’ performance of the agreement,” as it “can ... demonstrate a *657 latent ambiguity in the contract, which itself is a basis upon which to deny summary judgment.” Smith v. Hartford Ins. Group, 6 F.3d 131, 138-39 (3d Cir.1993) (citations omitted). Moreover,
[t]o decide whether a contract is ambiguous, we do not simply determine whether, from our point of view, the language is clear.... Before making a finding concerning the existence or absence of ambiguity, we consider the contract language, the meanings suggested by counsel, and the extrinsic evidence offered in support of each interpretation. Extrinsic evidence may include the structure of the contract, the bargaining history, and the conduct of the parties that reflects their understanding of the contract’s meaning.
Teamsters Indus. Employees Welfare Fund v. Rolls-Royce Motor Cars, Inc., 989 F.2d 132, 135 (3d Cir.1993) (citations omitted). Accord Bethlehem Steel Corp. v. United States, 270 F.3d 135, 139 (3d Cir. 2001). If this is the case with respect to summary judgment, how much more so is it at the motion to dismiss stage.
In the end my colleagues may be right— these post-release acts may have been simply “mistake[s].” Maj. Op. at 655. My suspicion otherwise — strong as it is that sophisticated principals would not have acted against their self-interest so starkly, and so soon, after the release — may prove wrong. But my colleagues’ beliefs, and my skepticism, are irrelevant at the Rule 12(b)(6) stage. All that counts there are that we take Calvitti’s assertions of fact at face and determine whether, despite that, he cannot win as a matter of law. With the facts of our case, at the least this calls for discovery. None was had here. Without it, Calvitti’s statements stand, and there is nothing to counter them but the words of a release the meaning of which is disputed by the parties.
To conclude, I do not believe that the words of the release are so clear as some believe. Maybe the release was of all claims Calvitti may have to any assets in the Trust or perhaps it was simply an agreement that KDI need not make additional contributions to the Plan that would arise post-release (thus making sense out of the post-release additional contribution to the Trust of KDI’s obligation that arose pre-release). Perhaps this is some form of trust that prevents the Plan sponsor (KDI), absent its insolvency or the Trust’s termination by agreement, from holding back deemed Trust assets to its beneficiary (Calvitti). (KDI is not insolvent, and nothing in the release triggers Trust termination.) Perhaps KDI’s post-release conduct against its own interest is explainable. When these questions are weighed against the backdrop that (1) a release discharges claims that have arisen at the time of that release, and not future claims, see Medtronic AVE, Inc. v. Advanced Cardiovascular Sys., Inc., 247 F.3d 44, 56 n. 4 (3d Cir.2001), thus leaving the question of whether Calvitti’s claim for benefits accrued under ERISA prior to the release or when he reached age 65, and (2) even words clear at face are subject to evidence of the parties’ contrary intent, a ruling here for either party fails to fit Rule 12(b)(6).
I thus respectfully dissent and would remand this case to the District Court.

. Unless otherwise noted, terms defined by the majority are used here.